IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:22-cv-00659-MEO-DCK

MICHAEL KERNEA and
CHRISTY KERNEA,

      *Plaintiffs*,

v.

CITY OF CHARLOTTE,

      *Defendant*.

**DEFENDANT CITY OF CHARLOTTE'S ANSWER TO SECOND AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES**

Defendant the City of Charlotte, inclusive of Lee Lowery in his official capacity, by and through counsel, answers the Second Amended Complaint (Doc. 50) (as limited by the Court's order on the City's Motion to Dismiss, Doc No. 71) and asserts affirmative defenses as follows.

\*\*\*

1. This case involves undisputed violent actions and extreme misconduct by Officer Lee Lowery of the Charlotte-Mecklenburg Police Department (hereinafter referred to as "CMPD"). On March 08, 2020, while traveling through Charlotte Douglas International Airport (hereinafter referred to as "CLT" or "Airport"), Plaintiff was violently approached, physically attacked, and arrested without justification or probable cause by Defendant Lowery.

    **ANSWER**: Admitted that on March 8, 2020, while traveling through Charlotte-Douglas International Airport, Plaintiff was punched and thrown to the ground arrested without probable cause by Lee Lowery, an employee of the Charlotte-Mecklenburg Police Department, a department of the City of Charlotte. Except as expressly admitted, denied.

2. This violent attack was witnessed by Plaintiff Michael Kernea's wife, Plaintiff Christy Kernea, who suffered emotional distress as a result of Defendant Lowery's outrageous and unjustified conduct.

    **ANSWER**: Admitted that Plaintiff Christy Kernea witnessed the altercation with Lee Lowery. Except as expressly admitted, denied.

3. On January 10, 2025, this Court ruled that Plaintiff is granted with modification an Amended Complaint, but restrictions set forth in the Order (Doc No. 36). The Court concluded

1

that Plaintiffs Amended Complaint due on or before February 25, 2025 must comply with the following restrictions: (1) Plaintiffs could not bring any legal claims against Defendant Officer Lee Lowery in his individual capacity and (2) Plaintiffs were not allowed to bring any subsequent *Monell* liability claims under 42 U.S.C. §1983 against Defendant City of Charlotte under the doctrine of respondeat superior.

    **ANSWER**: Admitted.

4. On January 10, 2025, Plaintiff's former counsel filed a Motion to Withdraw and a Motion for a Stay of the Proceedings (Doc. No. 39) and the Motion was subsequently granted (Doc. No. 41).

    **ANSWER**: Admitted.

5. Plaintiffs now submit this Amended Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure and in compliance with this Court's aforementioned Order (Doc. No. 36) and Scheduling Case Management Order (Doc. No. 19 and 47).

    **ANSWER**: Admitted.

6. This Court has original subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) and 42 U.S.C. § 1988 because the claims asserted by Plaintiffs arise under the laws of the United States and seek redress for rights guaranteed by the United States Constitution and of state law.

    **ANSWER**: Denied. Following the Court's ruling on the motion to dismiss, there are no remaining claims arising under federal law.

7. Plaintiff further invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any and all North Carolina state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

    **ANSWER**: Denied that the Court has supplemental jurisdiction. Admitted that diversity jurisdiction exists and that the Court has subject matter jurisdiction over this dispute.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because (i) the events giving rise to the claim occurred in this District, and (ii) on information and belief, multiple Defendants reside within this District.

    **ANSWER**: Admitted.

9. Plaintiff Michael Kernea is a citizen and resident of Walker County, Chickamauga, Georgia.

    **ANSWER**: Admitted.

10. Plaintiff Christy Kernea is a citizen and resident of Walker County, Chickamauga, Georgia.

   **ANSWER**: Admitted.

11. Defendant City of Charlotte (hereinafter "City" or "Defendant City") is an incorporated municipality organized under the laws of the State of North Carolina. It maintains and operates the Charlotte-Mecklenburg Police Department ("CMPD"). Employees of CMPD are employees and agents of the City, which bears legal responsibility under state law for the acts and omissions of CMPD's employees undertaken in the course of their employment. The City is responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

   **ANSWER**: Admitted that the City is an incorporated municipality organized under the laws of the State of North Carolina. Admitted that the City maintains and operates the Charlotte-Mecklenburg Police Department ("CMPD"). The remaining allegations of this paragraph state legal conclusions to which no response is necessary.

12. Pursuant to N.C.G.S. § 160A485.5 and by ordinance adopted by its elected Council, Defendant City has waived its governmental immunity from negligence of CMPD police officers pursuant to the State Tort Claims Act. That waiver applies to Plaintiffs' claims set forth in this action.

   **ANSWER**: Admitted that the City has waived sovereign immunity for state tort judgments of up to $1,000,000 per the cited statute and through a resolution adopted by City Council. Except as expressly admitted, denied.

13. Defendant City is also being sued by Plaintiffs under 42 U.S.C. § 1983 for the violation of Plaintiff Michael Kernea's Fourth Amendment rights. Defendant City, by and is a "person" acting under color of law for purposes of 42 U.S.C. § 1983 and a corporate entity under state law. Defendant's City Manager and Police Chief have expressly ratified the unlawful arrest and violent attack of Plaintiffs, subjecting the City to liability under § 1983. That ratification was made under color of state law.

   **ANSWER**: Denied. The Court dismissed all § 1983 claims against the City.

14. Upon information and belief, and at all relevant times to this action, the Defendant Officer Lee Lowery is/was an adult citizen and resident of Mecklenburg County and is/was employed as a law enforcement officer with the CMPD. He is sued in his official capacity under North Carolina state law negligence, assault, battery and other state law claims, and the City has waived governmental immunity as to that claim.

   **ANSWER**: Admitted that at all relevant times Lee Lowery was an adult citizen and resident of Mecklenburg County who was employed as a police officer with the CMPD, a department of the City of Charlotte. Except as expressly admitted, denied.

15. Plaintiffs hereby repeats, reiterates, re-alleges and incorporates by reference the allegations contained in all previous paragraphs into this Claim for Relief.

    **ANSWER**: The City incorporates all prior responses as if restated here.

16. On March 07, 2020, at approximately 11:00pm, Plaintiffs Michael Kernea and Christy Kernea arrived at the Charlotte-Douglas International Airport (hereinafter "CLT Airport" or "Airport).

    **ANSWER**: Admitted.

17. Plaintiffs, a married couple were returning from vacation and were seeking return to their then home in Tennessee. Because of flight delays, Plaintiffs were instructed to wait for the next available flight from Charlotte to Tennessee, which was scheduled for 7:00am the following morning. Plaintiffs arranged hotel accommodations at a hotel nearby the Airport and were preparing to collect their belongings before leaving the Airport.

    **ANSWER**: Admitted.

18. At or around 12:01 am, Michael Kernea and his wife went to a Starbucks located inside of the Airport. He later realized that there were no available chairs outside of the Starbucks and so Michael Kernea sat on a chair at the 1897 Restaurant, which was adjacent to the Starbucks, as he waited for his wife Christy Kernea to finish her purchase of food.

    **ANSWER**: Admitted.

19. At the same time and place, as Plaintiffs gathered their belongings and began to exit the area where Michael Kernea was seated, he heard a loud yell. Plaintiffs stopped, turned around, and saw a person approaching them. This person was Defendant, Officer Lee Lowery of the Charlotte-Mecklenburg Police Department ("CMPD").

    **ANSWER**: Admitted.

20. At approximately 12:05 AM, Officer Lee Lowery was on duty inside the Charlotte-Douglas International Airport, and claimed to have observed Michael Kernea sitting on a stool near 1897 Restaurant. Officer Lowery was visibly upset and hostile, accusing Mr. Kernea of not returning the stool to its correct position.

    **ANSWER**: Admitted.

21. Officer Lee Lowery yelled in the direction of Plaintiffs, and instructed Michael Kernea to place the stool back inside the restaurant.

    **ANSWER**: Admitted.

22. Confused by the request, Michael Kernea informed Officer Lowery that he was not responsible for the stool being moved from the original location and did not think that it was his responsibility to move it to any place at that time. Furthermore, Mr. Kernea was caught off-guard by Officer Lowery's loud tone and aggressive nature as he yelled at Plaintiffs.

**ANSWER**: Admitted that Michael Kernea informed Officer Lowery that he was not responsible for the stool being moved from the original location and did not think that it was his responsibility to move it to any place at that time. Except as expressly admitted, denied.

23. Within a matter of seconds, Officer Lowery charged in the direction of Michael Kernea placing his face approximately an inch from Mr. Kernea's face, yelling for Mr. Kernea to do as he said.

**ANSWER**: Admitted.

24. At the same time and place, Mr. Kernea replied to Officer Lowery, "I will not do your dirty work," and proceeded to walk away from this aggressive encounter that was an apparent initiation and escalation by Officer Lowery.

**ANSWER**: Admitted upon information and belief that Mr. Kernea said something to the effect of the quoted language. Except as expressly admitted, denied.

25. At the same time and place, Officer Lowery became visibly upset by Mr. Kernea's refusal to place the stool back and began making threats to Michael Kernea. Officer Lowery demanded that if Mr. Kernea "said one more word" that he was "going to jail."

**ANSWER**: Admitted that at the same time and place Lowery became visibly upset by Mr. Kernea's refusal to place the stool back. Further admitted that Lowery threatened to send Mr. Kernea to jail. Except as expressly admitted, denied.

26. In the immediate seconds after this, Officer Lowery then drew his arm back and with full force punched Mr. Kernea in his face, striking him just below his nose.

**ANSWER**: Admitted.

27. At or around the same time of striking Mr. Kernea in the face, Officer Lowery violently grabbed Mr. Kernea by the waist, lifted him the air, and slammed him to the ground, crushing Mr. Kernea's shoulder, face, and upper extremities to the cold concrete floor.

**ANSWER**: Admitted that Officer Lowery grabbed Mr. Kernea by the waist, lifted him the air, and forcefully took him to the ground. Except as expressly admitted, denied.

28. In the same instance, Mr. Kernea screamed for help as he laid shiftlessly on the floor, in excruciating pain. His wife, Christy Kernea was several feet away from the violent attack, and had witnessed everything that had just occurred. She was shocked, horrified, and stood indolent just feet away pleading for Officer Lowery to stop hurting Mr. Kernea.

**ANSWER**: Admitted that Christy Kernea was several feet away from the altercation, and had witnessed everything that had just occurred. Further admitted that she asked Officer Lowery to adjust Mr. Kernea's position to avoid further injury. Except as expressly admitted, denied.

29. At this time, Mrs. Kernea began pleading with Officer Lowery to be careful since her husband had recently had surgery on his shoulder as she stared into the face of Mr. Kernea, who appeared scared, humiliated, and in obvious physical pain by what had just unfolded in a matter of seconds in the Airport.

**ANSWER**: Admitted that Christy Kernea began pleading with Officer Lowery to be careful since her husband had recently had surgery on his shoulder. Except as expressly admitted, denied.

30. At the same time, Officer Lowery was unrelenting as she began to handcuff Mr. Kernea, violently holding him in a subdued position, pulling his arms and pushing his neck to the floor.

**ANSWER**: Denied.

31. Officer Lowery continued to persist, aggressively tightening the handcuffs onto the wrists of Michael Kernea. Officer Lowery turned and twisted Mr. Kernea's body, pulling his arms to the front of his body. This action caused Mr. Kernea to plead with Officer Lowery to loosen the handcuffs as he began to experience the circulation of blood to cut off, making it difficult from Mr. Kernea to breath.

**ANSWER**: Denied.

32. Officer Lowery persisted, and Mr. Kernea felt the burning sensation on his wrist from the tighten handcuffs. As Mr. Kernea looked up, he saw another officer rushing to the scene. Mr. Kernea then begged the second CMPD Airport Officer to loosen his handcuffs, as tears formed in his eyes.

**ANSWER**: Denied.

33. At the same time and place, Mr. Kernea was pulled by his arms to his feet by officer state something to the effect of, "ok, this has gone too far." Mr. Kernea was finally placed on his feet, and looked to his wife in his dismay. They made eye-contact as she followed behind Officer Lowery and his colleague closely, as Officer Lowery pulled Mr. Kernea to follow him to another location.

**ANSWER**: Denied.

34. This CMPD Airport Officer witnessed Mr. Kernea in apparent pain and the requested MEDIC to respond to the scene to render medical treatment to Mr. Kernea.

**ANSWER**: Admitted.

35. Officer Lowery placed Mr. Kernea under arrest and charged him for disorderly conduct and resisting a public officer.

    **ANSWER**: Admitted.

36. Following this violent encounter, Mr. Kernea taken into custody and spoke with a CMPD Sergeant to give his version of events. The CMPD Officer asked Mr. Kernea questions and informed Mr. Kernea and his wife that he would "review the body-worn camera footage of Officer Lowery" to make a determination of what happened.

    **ANSWER**: Admitted that Mr. Kernea was taken into custody and spoke with a CMPD Sergeant to give his version of events. Admitted that the sergeant asked Mr. Kernea questions and told him that video footage of the incident would be reviewed. Except as expressly admitted, denied.

37. At this same time and place, it was determined by CMPD Sergeant and other supervising CMPD officials that Officer Lee Lowery, in violation of State Law and CMPD policy, had turned off his body-worn camera and did not record his interaction that would have captured this violent assault on Mr. Kernea nor the horrifying aftermath that Mrs. Kernea witnessed.

    **ANSWER**: Admitted that Officer Lowery violated CMPD policy by not activating his body-worn camera during the altercation with Plaintiff. Except as expressly admitted, denied.

38. As Mr. Kernea was now arrested and escorted in handcuffs to a CMPD squad car to be processed for his charges, a nearby officer witnessed Mr. Kernea's significant limp and knew he needed medical assistance. The officer took pictures of Mr. Kernea's leg and knee.

    **ANSWER**: Admitted that an officer took pictures of Mr. Kernea's leg and knee. Except as expressly admitted, denied.

39. Mr. Kernea was processed at the nearby jail in Charlotte and Mrs. Kernea arrived several hours later to post a bail of $1,000.00 for Mr. Kernea's release from detention.

    **ANSWER**: Admitted.

40. The next day, on March 09, 2020, Michael Kernea traveled back to Tennessee where he sought medical treatment at Chattanooga Memorial Hospital for traumatic and acute injuries that Mr. Kernea sustained as a result of violent attack, arrest, and detention by Officer Lee Lowery.

    **ANSWER**: Admitted that the next day, on March 09, 2020, Michael Kernea traveled back to Tennessee where he sought medical treatment at Chattanooga Memorial Hospital for injuries sustained in the altercation with Officer Lowery. Except as expressly admitted, denied.

41. Following his release from jail, Mr. Kernea was issued an arrest citation and order to appear in Mecklenburg County District Court for the charges of disorderly conduct and resisting arrest or resisting a public officer that were instituted by Officer Lee Lowery.

    **ANSWER**: Admitted.

42. In the weeks following the horrifying event, Mr. and Mrs. Kernea experienced severe and significant trauma, anxiety, and emotional distress as they attempted to understand what happened on March 08, 2020. Neither Michael or Christy Kernea felt as if they had the language how to explain this traumatic event to loved ones or close family and relived the event every single day. To make matters worse, Mr. Kernea still had pending criminal charges from the attack and felt humiliated by the entire event.

    **ANSWER**: Denied on lack of information.

43. Mr. Kernea spent several months treating with medical providers and other physicians for the physical, mental, and emotional injuries that he sustained on March 08, 2020, as a result of Officer Lowery's actions. Mrs. Kernea also began seeking treatment for the traumatic event that she witnessed.

    **ANSWER**: Denied.

44. It was later determined that the horrifying events were captured on video surveillance by the Charlotte-Douglas International Airport and clearly captures an unobstructed view of the violent assault and battery of Michael Kernea by Officer Lowery.

    **ANSWER**: Admitted that video surveillance footage captures unobstructed views of the altercation at the airport. Except as expressly admitted, denied.

45. On July 27, 2020, Mr. Kernea received a letter from Charlotte-Mecklenburg Police Department via certified mail, informing the Kernea's of the results from their investigation of the actions by Officer L.M. Lowery on March 08, 2020.

    **ANSWER**: Admitted.

46. In the letter, CMPD stated, in relevant part, the following: "On March 8, 2020, Officer Lowery initiated needless contact with Mr. Michael Kernea inside the Charlotte-Douglas Internation Airport. Officer Lowery placed Mr. Kernea under arrest for disorderly conduct and resisting arrest."

    **ANSWER**: Admitted.

47. In the same letter, CMPD stated, "Officer Lowery did not have probable cause to arrest Mr. Kernea for a violation of North Carolina General Statute 14-223 (Resisting Public Officers) and 14-288.4 (Disorderly Conduct). Officer Lowery's conduct was not in compliance with CMPD Directive 600-019 (Response to Resistance)."

> **ANSWER**: Admitted.

48. CMPD's Internal Affairs Bureau and an Independent Chain of Command Review Board was convened on May 06, 2020, and reviewed the allegations of excessive use of force, unlawful arrest, search and seizure, and Officer Lowery's actions including his failure to operate or use a body worn camera. The disposition of this investigation, as set forth in the aforementioned correspondence from CMPD to Mr. Kernea concluded that the "use of force upon Mr. Kernea was NOT JUSTIFIED pursuant to Charlotte-Mecklenburg Police Department Directive 600-019 IV A.1 …"

> **ANSWER**: Admitted.

49. It is undisputed fact that, as evidence by the July 27, 2020, letter from CMPD that "Officer Lowery did not have probable cause to arrest Mr. Michael Kernea."

> **ANSWER**: Admitted.

50. It is undisputed fact that, as evidence by the July 27, 2020, letter from CMPD that "Officer Lowery used excessive force during the arrest of Mr. Michael Kernea."

> **ANSWER**: Admitted.

51. It is undisputed fact that, as evidenced by the July 27, 2020, letter from CMPD that Mr. Kernea's complaint of excessive use of force and unlawful arrest were sustained by the Board, concluding that the facts and evidence were sufficient to prove the allegations set forth against Officer Lee Lowery.

> **ANSWER**: Admitted that it is undisputed that Officer Lowery used excessive force and unlawfully arrested Plaintiff. Except as expressly admitted, denied.

52. Despite these undisputed facts, Officer Lee Lowery received only 240 hours of suspension without pay (only served 120 hours) and was instructed to complete "Arrest, Search and Seizure Training and Response to Resistance Training" that he should have already received or had completed prior to the violent, unlawful, unjustifiable, and egregious attack that permanently impacted Plaintiffs Michael and Christy Kernea.

> **ANSWER**: Admitted that Officer Lowery received 240 hours of unpaid suspension. Admitted that Officer Lowery forfeited 120 hours of vacation time to fulfill half of the suspension. Admitted that Officer Lowery was also instructed to again take a course in "Arrest, Search and Seizure Training and Response to Resistance Training" that he had already taken. Except as expressly admitted, denied.

53. As a result of this violent, unlawful, unjustifiable, and egregious attack by Officer Lowery and CMPD, Plaintiffs have suffered years of indescribable pain, agony, and permanent injuries for the conduct described above that demonstrated a blatant violation of their civil rights under the United States Constitution, North Carolina Constitution, Federal Law, and State Law. Furthermore,

9

the violent attack by Officer Lowery is illustrates a vicious abuse of power and authority, leaving an indelible and irreversible violation of Plaintiffs' human dignity, bodily safety, and emotional well-being.

**ANSWER**: Denied.

## CLAIMS FOR RELIEF

*The Court dismissed Claims 1–4 of the Second Amended Complaint, thus, this answer does not respond to paragraphs 54 through 87 of the Second Amended Complaint.*

### FIFTH CLAIM FOR RELIEF
### Negligence of Defendant City – *Respondeat Superior*/Vicarious Liability

88. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**ANSWER**: The City incorporates all prior responses as if restated here.

89. This claim is brought by Plaintiffs against Officers Lowery, who is sued under this claim in his official capacity.

**ANSWER**: Denied. This contradicts the heading of this claim, and the Court dismissed the official capacity negligence claim against Defendant Lowery.

90. In committing the acts alleged in the previous paragraphs, Defendant Lowery, Officer Lee Lowery, is/was an employee or agent of the City of Charlotte, acting within the scope of his employment of Charlotte-Mecklenburg Police Department ("CMPD").

**ANSWER**: Denied.

91. The City of Charlotte, on information and belief, has waived immunity for this claim on behalf of the City and its officers acting in their official capacities.

**ANSWER**: Denied.

92. Therefore, the City is liable as principal for the torts committed by its agents in the course and scope of their employment under the doctrine of respondeat superior.

**ANSWER**: Denied.

93. The City, through its officers, had the following duties:

a. to ensure that citizens were not wrongfully arrested and charged without probable cause;

b. ensure that only reliable sources of evidence were used in criminal prosecutions;

c. to not omit material evidence (including exculpatory evidence) from magistrates, district attorneys and the grand jury;

d. to exercise reasonable care when engaging in criminal investigations; and

e. to include accurate information in reports describing evidence in their possession.

**ANSWER**: Admitted.

94. The City, through its officers, was negligent and breached duties owed to Plaintiffs in the following respects:

a. The officer defendants wrongfully caused Mr. Kernea to be arrested and charged without probable cause;

**ANSWER**: Admitted that Officer Lowery wrongfully caused Mr. Kernea to be arrested and charged without probable cause

b. Officer Lowery omitted key information to the magistrate and district attorney during the course of his investigation and when seeking to press charges against Michael Kernea;

**ANSWER**: Denied.

c. In other respects, to be proved through discovery and at trial.

**ANSWER**: Denied.

95. Defendant City of Charlotte, by and through its agents, was negligent and breached each of the duties outlined above, resulting in Mr. Kernea being deprived of his right to be free from wrongful arrest and prosecution.

**ANSWER**: Denied.

96. Defendant City, as the principal for its agents, including Defendant Lowery and other similarly situated officers, is responsible under respondeat superior for the injuries caused by the acts and omissions alleged herein.

**ANSWER**: Denied.

97. Defendant Officer Lowery acted within the course and scope of his employment in the acts and omissions alleged herein.

**ANSWER**: Denied.

98. As a direct and proximate result of the negligence of the City, through its officers, Plaintiff was wrongfully arrested, detained and prosecuted and suffered physical, emotional and pecuniary damages.

**ANSWER**: Admitted that Plaintiff was wrongfully arrested, detained and prosecuted and suffered physical damages caused by Lee Lowery. Except as expressly admitted, denied.

## SIXTH CLAIM FOR RELIEF
### North Carolina State Law Malicious Prosecution
### against Defendants City and Officer Lee Lowery (in his Official Capacity)

99. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**ANSWER**: The City incorporates all prior responses as if restated here.

100. This claim is brought by Plaintiffs against Officer Lee Lowery.

**ANSWER**: Admitted that the claim is brought by Plainitff Michael Kernea against Officer Lee Lowery, in his official capacity only, which is really a claim against the City. Except as expressly admitted, denied.

101. Defendant Lowery knew, at the time of yelling at Mr. Kernea, charging in his direction as the first aggressor in starting a verbal altercation, physically punching and slamming Michael Kernea during an unlawful arrest, instituting false criminal charges against Michael Kernea, and fabricating or omitting material facts to the magistrate and/or district attorney in the criminal prosecution of Michael Kernea.

**ANSWER**: Denied as unintelligible.

102. Defendant Lowery also knew Mr. Kernea had not committed any criminal act, was not engaging in "disorderly conduct," and was not resisting arrest. Despite knowing this, Defendant Lowery unlawfully arrested Mr. Kernea by the exercise of excessive force and maliciously sought to initiate criminal charges against Mr. Kernea.

**ANSWER**: Admitted that Lowery did not have probable cause to arrest Mr. Kernea for disorderly conduct or resisting arrest; further admitted that Lowery should have known he lacked probable cause. Further admitted that Lowery used excessive force and pursued criminal charges without probable cause. Except as expressly admitted, denied.

103. Defendant Lowery acted in the aforementioned ways for an improper purpose in an attempt to cover up his violent attack, brutality, and unjustifiable actions.

**ANSWER**: Denied.

104. As a direct and proximate result of Defendant Lowery's acts, Mr. Kernea was wrongfully arrested and imprisoned, causing him to suffer the injuries and damages described herein.

**ANSWER**: Admitted that as a direct and proximate result of Lowery's acts, Mr. Kernea was wrongfully arrested and imprisoned. Further admitted that Lowery caused Mr. Kernea to suffer physical injuries. Except as expressly admitted, denied.

## SEVENTH CLAIM FOR RELIEF
### Assault and Battery

105. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**ANSWER**: The City incorporates all prior responses as if restated here.

106. In the alternative, the actions and conduct of Defendant Lowery in the intentional violent attack of Michael Kernea and the simultaneous unlawful arrest done by or with excessive force, without legal justification, constitutes assault and battery under North Carolina law.

107. Defendant Lowery is liable for assault in that he:

    a. Defendant Lowery, by an intentional act or display of force and violence threatened the plaintiff with imminent bodily injury. It is undisputed that Defendant Lowery made a voluntary and volitional act when he: (1) yelled in the direction of Plaintiff to move a stool, (2) charged at Plaintiff, coming within an inch of his face, (3) threatened Plaintiff that he would be "going to jail" if he did not obey his unreasonable demands, (4) threw a punch that struck Mr. Kernea's face, (5) picked Mr. Kernea up by holding his waist and slammed him the floor, (6) unjustifiably arrested Mr. Kernea, placing handcuffs tightly around his wrist while taking him into jail, and (7) initiated criminal charges that were later determined to be false, not supported by probable cause, and were later dismissed.

**ANSWER**: Denied that Lowery is liable for assault. Admitted that Lowery threatened Plaintiff with imminent bodily injury. Further admitted that Lowery made a voluntary and volitional act of yelling in the direction of Plaintiff to move a stool. Admitted that he moved toward Plaintiff and got close to his face. Admitted that Lowery told Plaintiff he was going to jail. Admitted that Lowery punched Plaintiff in the face. Admitted that Lowery slammed Plaintiff into the floor. Admitted that Plaintiff arrested Plaintiff without probable cause. Admitted that Lowery placed Plaintiff in handcuffs. Admitted that Lowery initiated criminal charges that were later dismissed. Except as expressly admitted, denied.

    b. Defendant Lowery's intentional act was such that it caused the Plaintiff Michael Kernea to have a reasonable apprehension that harmful and/or offensive contact with his person was imminent. Mr. Kernea had reasonable apprehension that harmful or offensive contact would occur following the loud threats by Lowery, which resulted in Mr. Kernea eventually becoming a victim of Lowery's needless contact with Mr. Kernea's person and physical force during the commission of an unlawful arrest.

**ANSWER**: Admitted.

108. Defendant Lowery is liable for battery in that he:
    a. Intentionally caused bodily contact with Plaintiff Michael Kernea.
    b. That such bodily contact actually offended a reasonable sense of personal dignity, and otherwise caused physical pain or injury.
    c. That such contact by Defendant Lowery was without Mr. Kernea's consent.

**ANSWER**: Denied that Lowery is liable for battery. Admitted that Lowery intentionally caused bodily contact with Plaintiff Michael Kernea. Admitted that such bodily contact actually offended a reasonable sense of personal dignity, and otherwise caused physical pain or injury. Admitted that such contact by Defendant Lowery was without Mr. Kernea's consent

109. Defendant Lowery is sued in his official capacity on this claim. His unjustified actions displayed willful and wanton disregard of Plaintiff's rights and well-being and exceeded the scope of his lawful authority, thereby piercing any entitlement to public officer immunity.

**ANSWER**: Admitted that Lowery is sued in his official capacity. Except as expressly admitted, denied.

110. Furthermore, because Defendant Lowery committed these actions constituting battery and assault while in the course and scope of his employment and because Defendant City has waived immunity in tort liability by statute, such actions are imputed against Defendant City, thereby piercing any sovereign immunity.

**ANSWER**: Denied.

***The Court dismissed claim eight, thus, this answer does not respond to paragraphs 111–118 of the Second Amended Complaint.***

## NINTH CLAIM FOR RELIEF
### Negligent Infliction of Severe Emotional Distress

119. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**ANSWER**: The City incorporates all prior responses as if restated here.

120. This claim is brought by Plaintiff Christy Kernea against Officer Lowery, who is sued under this claim in his official capacity.

**ANSWER**: Admitted.

121. Defendant Lowery was negligent as described in the allegations set forth in the preceding paragraphs, namely paragraphs 79 through 87 of this action.

**ANSWER**: Denied.

14

122. Plaintiff Christy Kernea, who witnessed the entire horrifying event and was just several feet away from the incident, suffered severe emotional distress as a proximate result of the negligence of Defendant Lowery, which is also imputed to his employer – Defendant City.

**ANSWER**: Admitted that Christy Kernea was just several feet away from the incident. Except as expressly admitted, denied.

123. Plaintiff suffered severe and disabling anxiety, trauma, and has treated with mental health professionals for emotional distress and injuries sustained from what Plaintiff describes as a horrifying event.

**ANSWER**: Denied.

124. Such negligence by Defendant Lowery was such that a reasonable and prudent person could have foreseen would probably produce such severe emotional distress.

**ANSWER**: Denied.

125. Defendant Lowery was aware of Plaintiff Christy Kernea's presence during the incident, as she pleaded with Officer Lowery to stop the violent and unlawful arrest and watched closely as her husband was pinned defenselessly on the ground.

**ANSWER**: Admitted.

126. Defendant's negligence was the proximate cause of Christy Kernea's severe emotional distress as she witnessed her husband, Mr. Kernea, being wrongfully arrested, criminally charged, and imprisoned while Christy Kernea cried for help but could do nothing to stop Defendant Lowery's malicious actions.

**ANSWER**: Denied.

**TENTH CLAIM FOR RELIEF**
**Intentional Infliction of Emotional Distress**

127. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**ANSWER**: The City incorporates all prior responses as if restated here.

128. This claim is brought by Plaintiff Christy Kernea against Officer Lowery, who is sued under this claim in his official capacity.

**ANSWER**: Admitted.

129. In the alternative, the actions and conduct of Defendant Lowery in the intentional violent attack of Michael Kernea in the presence of his wife, Christy Kernea, was an outrageous act that resulted in severe and significant emotional distress, constitutes intentional infliction of emotional distress under North Carolina law.

**ANSWER**: Denied.

130. As described in the preceding paragraphs, Defendant Lowery acted with willful, wanton, and reckless disregard for the safety of others in this incident.

**ANSWER**: This paragraph states a legal conclusion to which no response is required. To the extent the Court requires a response, denied..

131. Defendant Lowery's intentional and reckless conduct caused severe emotional distress to Plaintiff Christy Kernea.

**ANSWER**: Denied.

132. Defendant Lowery engaged in extreme and outrageous conduct that exceeded all bounds usually tolerated by decent society and resulted in an unlawful arrest with excessive force, violating Mr. Kernea's Constitutional Rights – while Christy Kernea became horrified as she stood feet away from the violent attack of her husband.

**ANSWER**: Denied.

133. Defendant Lowery's conduct in fact caused severe and/or significant emotional distress to Christy Kernea, including severe or disabling emotional and mental conditions and impairment resulting from the incident of Defendant's negligence.

**ANSWER**: Denied.

*The Court dismissed claim 11 of the Second Amended Complaint, thus, this Answer does not address paragraphs 134–137 of the Second Amended Complaint.*

## AFFIRMATIVE DEFENSES

1. Plaintiff's claims against Defendant are barred, reduced, and/or limited pursuant to applicable statutory provisions and common law doctrines regarding limitations of awards and caps on recovery.

2. Defendant is protected by and hereby asserts governmental and/or sovereign immunity to the extent permitted by applicable laws as a bar to Plaintiffs' claims against Defendant or its employees in their official capacities.

3. Plaintiffs' damages, if any, are barred or limited by their failure to mitigate damages.

**PRAYER FOR RELIEF**

Wherefore, upon a trial of this matter or following motion practice, the City prays that the Court:

1. Enter judgment in favor of the City and against Plaintiffs;
2. Deny all of Plaintiff's requests for relief;
3. Grant the City any and all other further relief that the Court deems just and proper.

Dated: February 11, 2026                                  Respectfully submitted,

**OFFICE OF THE CITY ATTORNEY**

/s/ *Taylor Imperiale*
Taylor Imperiale (N.C. Bar No. 61777)
Assistant City Attorney
Charlotte-Mecklenburg Government Center
600 E. Fourth Street
Charlotte, North Carolina 28202
Telephone: (980) 275-9796
Taylor.Imperiale@charlottenc.gov

*Counsel for Defendant City of Charlotte and Lee Lowery, in his official capacity*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed using the CM/ECF system, which will electronically notice all counsel of record.

Dated: February 11, 2026.

/s/ *Taylor Imperiale*