IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:22-cv-00659-MEO-DCK

MICHAEL KERNEA and
CHRISTY KERNEA

    *Plaintiffs*,

v.

CITY OF CHARLOTTE,

    *Defendant*.

# DEFENDANT CITY OF CHARLOTTE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

i

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................. iii

TABLE OF EXHIBITS ..................................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF UNDISPUTED MATERIAL FACTS .................................................. 2

LEGAL STANDARD ........................................................................................................ 3

ARGUMENT ..................................................................................................................... 4

    1.    The City Cannot Be Held Liable for Negligence Claims Where its Employee's Acts Were Intentional. ............................................................................................................. 4

        a.    Assault and Battery and Negligence Are Mutually Exclusive. ........................ 4

        b.    Ms. Kernea's Negligent Infliction of Emotional Distress and Intentional Infliction of Emotional Distress Claims Are Mutually Exclusive. ............................................. 5

    2.    The City Cannot Be Held Liable for Lowery's Intentional Torts Because He Did Not Act in Furtherance of the City's Business. ............................................................................. 6

        a.    Lowery's Assault and Battery Was Not in Furtherance of the City's Business. .............. 8

        b.    Lowery's Infliction of Emotional Distress on Ms. Kernea Was Not in Furtherance of the City's Business. ............................................................................................................ 9

        c.    Lowery's Initiation of Charges Without Probable Cause Was Not in Furtherance of the City's Business. ............................................................................................................ 9

CONCLUSION .................................................................................................................. 9

CERTIFICATE OF SERVICE .......................................................................................... 11

CERTIFICATION OF COMPLIANCE WITH STANDING ORDER IN RE: USE OF ARTIFICIAL INTELLIGENCE ...................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*BDM Invest. v. Lenhil, Inc.,* 826 S.E.2d 746 (N.C. App. 2019) ........................................................ 7
*Brown v. Burlington Indus., Inc.*, 378 S.E.2d 232 (N.C. App. 1989) ........................................... 6, 8
*Jenkins v. Department of Motor Vehicles*, 94 S.E.2d 577 (N.C. 1956) ............................................ 4
*Johnson v. Scott*, 528 S.E.2d 402 (N.C. App. 2000) ........................................................................ 5
*Kentucky v. Graham*, 473 U.S. 159 (1985) ...................................................................................... 1
*Lail v. Woods*, 244 S.E.2d 500 (N.C. App. 1978) ........................................................................ 4, 5
*Longworth v. United States*, No. 5:21-CT-3242-FL, 2022 WL 4587520 (E.D.N.C. Sept. 29, 2022) ............................................................................................................................................. 1
*Lynn v. Burnette*, 531 S.E.2d 275 (N.C. App. 2000) ....................................................................... 4
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ....................................... 4
*Medlin v. Bass*, 327 N.C. 587 (1990) ................................................................................... 2, 6, 7, 8
*Oldham v. Univ. of N. Carolina*, No. 1:22CV513, 2023 WL 3984031 (M.D.N.C. June 13, 2023) 1
*Reid v. Charlotte-Mecklenburg Bd. of Educ.*, 3:14-cv-00066- FWD-DSC, 2016 WL 6080545 (W.D.N.C. Feb. 12, 2016) ............................................................................................................ 4
*Robinson v. McAlhaney*, 198 S.E. 647 (N.C. 1938) ........................................................................ 6
*Stephenson v. Carolina Physicians Network*, No. 3:21-cv-103-FDW-DCK, 2021 WL 4558198 (W.D.N.C. Oct. 5, 2021) .......................................................................................................... 5, 6
*Troxler v. Charter Mandala Ctr., Inc.,* 365 S.E.2d 665 (N.C. App. 1988) ....................................... 6

**Rules**

Fed. R. Civ. P. 56(c) ........................................................................................................................ 3

# TABLE OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| Ex. 1 | Excerpts of Deposition of Lee Lowery |
| Ex. 2 | Excerpts of Deposition of Michael Kernea |
| Ex. 3 | Excerpts of Deposition of Christy Kernea |
| Ex. 4 (under seal) | Statement of Relevant Facts in Reference: Complaint of Excessive Use of Force and Unlawful Arrest by Mr. Michael Kernea against Officer Lee Lowery |
| Ex. 5 | Airport Surveillance Footage |
| Ex. 6 | Airport Surveillance Footage |

# PRELIMINARY STATEMENT

Following the Court's partial grant (Doc. Nos. 69, 70) of Defendant City of Charlotte's (the "City") Motion to Dismiss, Plaintiff Michael Kernea has three remaining claims against the City: negligence, malicious prosecution, and assault and battery. Plaintiff Christy Kernea has two claims left against the City: negligent infliction of emotional distress and intentional infliction of emotional distress. All remaining claims are either against Lee Lowery in his official capacity or against the City, but, in reality, all claims are against the City because a claim against an officer in his official capacity is a claim against the municipality. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Lee Lowery is not a defendant in his individual capacity because Plaintiffs failed to timely serve him, so the Court dismissed the claims against him. (Doc. No. 14 at 8.) Thus, the question presented by the instant motion is whether the City may be held vicariously liable on each of the five remaining claims contained in the Second Amended Complaint ("SAC") based on Lowery's conduct.

For two related reasons, the City is entitled to judgment as a matter of law on all remaining claims. First, there is no dispute that the allegedly tortious acts of Lee Lowery—punching and tackling Mr. Kernea in Ms. Kernea's presence—was clearly intentional. An intentional tort is not an act of negligence. Negligence and intentional torts are mutually exclusive. *See Longworth v. United States*, No. 5:21-CT-3242-FL, 2022 WL 4587520, *6 (E.D.N.C. Sept. 29, 2022) ("Under North Carolina law, when a party's actions amount to an intentional tort, the concept of negligence no longer applies."); *Oldham v. Univ. of N. Carolina*, No. 1:22CV513, 2023 WL 3984031, at *18 (M.D.N.C. June 13, 2023) (Plaintiff's "negligence claims attempt to plead that the individual Defendants negligently committed intentional torts, and thus fail to state a cognizable claim."). On the forecast evidence, the claims sounding in negligence therefore fail. Second, although Mr.

1

Lowery may very well have been liable for his intentional torts had he been properly served in this case, the City cannot be held vicariously liable where, as here, the torts were not committed in furtherance of the City's business. *See Medlin v. Bass*, 327 N.C. 587, 592–93 (1990) (explaining that employers are only liable for their employees' tortious conduct when the conduct is committed within the scope of and in furtherance of the employer's business). The evidence developed in this case shows that Lowery did not have any law enforcement purpose in requesting that Mr. Kernea move a stool and then punching and tackling Mr. Kernea when he refused to move the stool. Unjustifiably battering someone for no reason related to enforcing the law and then attempting to prosecute the battered person are not acts done in furtherance of the City's business. Indeed, the City disciplined Lowery for his conduct precisely because his actions were inconsistent with the law and the expectations and policies of his employer.

For these reasons, and as further elaborated below, there are no genuine disputes of material fact and the City is entitled to judgment as a matter of law on all remaining claims in this action.

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

On March 8, 2020, Lee Lowery was a CMPD officer working at Charlotte Douglas International Airport near a security checkpoint when he saw Plaintiff Mike Kernea sitting in a chair "for a minute." (Ex. 1 at 58:5–9.) According to Lowery, the chair did not belong where it was. (*Id.* at 58:1–2.) Lowery did not see Mr. Kernea put the chair where it was; he only saw him sitting in it. (*Id.* at 58:10–18.) Lowery did not see Mr. Kernea violate any law (*id.* at 62:22–24) nor did he tell Mr. Kernea that he had violated any law (Ex. 2 at 96:14–19 ("Q. Did Officer Lowery ever identify a law you were breaking by sitting on the stool? A. No. He just told me to—asked me to move it back, when he was right in my face. I told him I didn't. But he never said anything about a law I was breaking. He just started abusing me."); Ex. 3 at 118:21–24 ("Q. When Officer

Lowery was yelling in your direction and in the direction of your husband, did he identify any law that he thought your husband violated? A. No.")).

When Mr. Kernea stood up, Lowery told him to move the chair back to where it belonged. (Ex. 1 at 62:25–63:6.) Mr. Kernea responded that he had not put the "damn chair" there and that he did not want to move it back. (*Id.* at 63:5–6.) When Mr. Kernea refused to move the chair and began using some curse words, Lowery, in full view of Ms. Kernea, grabbed Mr. Kernea's arm, spun him around, punched him in the face, and tackled him to the ground. (Ex. 1 at 64:3–65:21.) As a result of this altercation, Mr. Kernea sustained injuries to his knees and face and potentially to his shoulder and teeth. These events are depicted in two airport surveillance camera recordings. (Exs. 5, 6.)

Lowery charged Mr. Kernea with disorderly conduct and resisting arrest. (Ex. 1 at 82:1–9.) All charges were later dismissed. (*Id.* at 124:2–5.)

CMPD's Internal Affairs Bureau ("IA") investigated these events and referred the issue to the Citizens Review Board (the "Board") for potential discipline of Lowery. The Board concluded that "Officer Lowery initiated needless contact with Mr. Michael Kernea inside the Charlotte-Douglas International Airport." (Ex. 4 at 2; Doc. No. 50, ¶ 46.) The Board further concluded "that the use of force upon Mr. Kernea was NOT JUSTIFIED pursuant to Charlotte-Mecklenburg Police Department Directive 600-019." (Ex. 4 at 2; Doc. No. 50, ¶ 48.) The Board imposed discipline on Lowery in the form of a 240-hour unpaid suspension and additional training in arrest, search, and seizure. (Ex. 4 at 3; Doc. No. 50, ¶ 52.)

**LEGAL STANDARD**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court should grant a summary judgment motion when the pleadings, responses to discovery, depositions, declarations, and other materials in the record establish that "there is no genuine issue as to any material fact

3

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. *Reid v. Charlotte-Mecklenburg Bd. of Educ.*, 3:14-cv-00066- FWD-DSC, 2016 WL 6080545, at *2–3 (W.D.N.C. Feb. 12, 2016) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). Once the moving party has met that burden, the nonmoving party has the burden of persuasion and must come forward with specific facts showing that there is a genuine issue for trial. *Id.*

## ARGUMENT

**1. The City Cannot Be Held Liable for Negligence Claims Where its Employee's Acts Were Intentional.**

There is no dispute that all of Lowery's challenged acts were intentional acts. He intentionally grabbed Mr. Kernea. He intentionally punched Mr. Kernea. He intentionally tackled Mr. Kernea. He intentionally handcuffed Mr. Kernea. And he intentionally filed charges against Mr. Kernea. The first question then that the Court must assess is whether the City can be held liable in negligence for Lowery's intentional acts. It cannot.

    *a.    Assault and Battery and Negligence Are Mutually Exclusive.*

"Negligence and intentional tort have been described as mutually exclusive theories of liability." *Lynn v. Burnette*, 531 S.E.2d 275, 279 (N.C. App. 2000). And there is no such thing as a negligent assault. *Id.* Indeed, as the North Carolina Supreme Court has made clear, "an intentional act of violence is not a negligent act." *Jenkins v. Department of Motor Vehicles*, 94 S.E.2d 577, 580 (N.C. 1956).

*Lail v. Woods*, 244 S.E.2d 500 (N.C. App. 1978) is instructive regarding the rule that an intentional act of violence is necessarily not an act of negligence. In that case, the defendant threw a rock at a plaintiff. There was no dispute that the defendant did so intentionally. Given the

4

undisputed evidence of intent, the trial court refused to submit issues of negligence to the jury and instead only allowed the case to proceed on the assault and battery claim. The North Carolina Court of Appeals affirmed that ruling, explaining that "there is no evidence that defendant did anything other than participate in a rock fight by throwing a rock at other children. Thus only issues based on the theory of assault and battery were appropriately submitted to the jury." *Lail*, 244 S.E.2d at 502.

Here, just as in *Lail*, there is no dispute that Lowery intended to punch and tackle Mr. Kernea. (Ex. 1 at 83:13–16 ("I threw a punch. And then I take control of his -- and take him to the ground and try to hold him to the ground by putting my weight on him.").) The acts of violence that Lowery engaged in were intentional, not negligent, and thus the City cannot be held liable for negligence on the same undisputed facts that underly Mr. Kernea's assault and battery claim.

> b. *Ms. Kernea's Negligent Infliction of Emotional Distress and Intentional Infliction of Emotional Distress Claims Are Mutually Exclusive.*

To succeed on her NIED claim (claim nine in the SAC), Ms. Kernea must establish that "(1) Defendant negligently engaged in conduct; (2) it was reasonably foreseeable that such conduct would cause Plaintiff severe emotional distress; and (3) the conduct did in fact cause Plaintiff severe emotional distress." *Stephenson v. Carolina Physicians Network*, No. 3:21-cv-103-FDW-DCK, 2021 WL 4558198, at *4 (W.D.N.C. Oct. 5, 2021) (citing *Johnson v. Scott*, 528 S.E.2d 402, 404 (N.C. App. 2000)). "Courts consistently dismiss NIED claims where they are based solely on intentional conduct such as claims of discrimination and retaliation, as opposed to negligent conduct." *Stephenson*, 2021 WL 4558198, at *5.

Here, Ms. Kernea's NIED claim is based on the distress she testified having experienced by viewing Lowery's intentional acts committed against her husband. She saw Lowery punch, tackle, and arrest her husband. Per the SAC, "Defendant Lowery was aware of Plaintiff Christy

Kernea's presence during the incident, as she pleaded with Officer Lowery to stop the violent and unlawful arrest and watched closely as her husband was pinned defenselessly on the ground." (Doc. No. 50, ¶ 125.) Those allegations are undisputed. (*See* Doc. No. 72 at ¶ 125.) No negligent conduct is alleged, and no negligent conduct has been revealed through discovery. Under *Stephenson*, the City is entitled to summary judgment on Ms. Kernea's NIED claim because discovery has revealed that the claim is indisputably based entirely on intentional conduct.

**2.      The City Cannot Be Held Liable for Lowery's Intentional Torts Because He Did Not Act in Furtherance of the City's Business.**

Having established that Plaintiff's remaining claims do not sound in negligence but rather in intentional tort, the question is now whether the City can be held liable for Lowery's undisputed intentional conduct. Because there is no genuine dispute that Lowery's intentional acts were not done in furtherance of the City's business and were not ratified by the City, the City cannot be liable and is entitled to summary judgment on the remaining intentional tort claims.

Intentional torts by employees do not usually subject employers to liability because "[i]ntentional tortious acts are rarely considered to be within the scope of an employee's employment." *Brown v. Burlington Indus., Inc.*, 378 S.E.2d 232, 235 (N.C. App. 1989). And some acts "are so clearly outside the scope of employment that summary judgment is proper." *Medlin*, 398 S.E.2d at 464. If an assault is committed by an employee "not as a means or for the purpose of performing the work he was employed to do, but in a spirit of vindictiveness or to gratify his personal animosity or to carry out an independent purpose of his own, then the master is not liable." *Robinson v. McAlhaney*, 198 S.E. 647, 650 (N.C. 1938).

"To be within the scope of employment, an employee, at the time of the incident, must be acting in furtherance of the principal's business and for the purpose of accomplishing the duties of his employment." *Troxler v. Charter Mandala Ctr., Inc.,* 365 S.E.2d 665, 668 (N.C. App. 1988). "If

6

an employee departs from that purpose to accomplish a purpose of his own, the principal is not liable." *Id.*; *see also BDM Invest. v. Lenhil, Inc.,* 826 S.E.2d 746, 764 (N.C. App. 2019) (explaining that "liability is not imposed on an employer when an employee engaged in some private matter of his own or outside the legitimate scope of his employment") (quotations omitted); *Phelps v. Vasey*, 437 S.E.2d 692, 694–95 (N.C. App. 1993) (explaining that an act is not within the scope of employment "if the employee departed, however briefly, from his duties in order to accomplish a purpose of his own") (quotations omitted).

Here, Lowery departed from his purpose as a City employee (enforcing laws) to accomplish a purpose of his own (ensuring that chairs get moved from places he does not like them to be). To accomplish Lowery's personal, quixotic objective, Lowery engaged in intentionally tortious conduct toward Mr. Kernea. The mere fact that Lowery was on duty does not subject the City to liability for the alleged intentional tort either. *See Medlin*, 327 N.C. at 595 (explaining that North Carolina law shifted away from a "while on duty" test for employer vicarious liability for intentional torts to a "less static 'within the scope of employment and in furtherance of the employer's business' test").

*Medlin* itself is a good analogy to the instant case, revealing why the City is entitled to summary judgment. There, a school principal summoned a child to his office at school using the authority vested in him by virtue of his role as principal and then proceeded to assault the child. There, the court held that the:

> "matters alleged and shown by the forecast of evidence . . . fall in the category of intentional tortious acts designed to carry out an independent purpose of defendant['s] own, and they thus were not within the course and scope of his employment with defendant . . . or in furtherance of any [employer] purpose. While [defendant] was exercising authority conferred upon him by [his employer] when he summoned the minor plaintiff to his office to discuss her truancy problem, in proceeding to assault her sexually he was advancing a completely personal objective. The assault could advance no conceivable purpose of [employer];

7

> [defendant] acted for personal reasons only, and his acts thus were beyond the course and scope of his employment as a matter of law."

*Medlin*, 398 S.E.2d at 464. Here, although the circumstances of the interaction between Mr. Kernea and Lowery are different than in *Medlin*, Lowery also purported to exercise the authority conferred upon him as a police officer but then proceeded to punch and tackle Mr. Kernea to advance a personal objective of his—ensuring that chairs in the airport are where he would like them to be.

Ratification of an employee's conduct can also serve as a basis for holding an employer liable for the employee's intentional tort, *see Brown*, 378 S.E.2d at 235–36, but in the instant case, it is undisputed that the City refused to ratify Lowery's conduct. In fact, rather than ratify his conduct, CMPD's disciplinary board unanimously decided to discipline him for the conduct that is the subject of the alleged intentional torts in this case. (Ex. 4.)

   a. *Lowery's Assault and Battery Was Not in Furtherance of the City's Business.*

It is undisputed that Lowery had no law enforcement purpose in approaching Mr. Kernea and then punching and tackling him to the ground. Lowery could not identify any law that he was supposedly enforcing by engaging with Mr. Kernea regarding the placement of a stool. Lowery did not even claim he was attempting to enforce any such law or that any such law existed. (Ex. 1 at 56:4–5 (" Q. Was [Mr. Kernea] breaking any law? A. No, he wasn't.")); (Ex. 1 at 59:1–9 ("Q. Well, was he—was he harassing anybody sitting in the chair? A. No, sir. Q. Was he breaking the law, any law that he would have known about, sitting in the chair? A. I wouldn't think so. Q. Were there any signs posted saying don't sit in this chair? A. No sign than I can recall.").) Instead, Lowery merely approached and ultimately battered Mr. Kernea for no reason related to his job function of law enforcement simply because he did not like that Mr. Kernea sat on a chair and did not move a chair. The City did not hire Lowery to do that. It hired him to enforce laws. That is why the City disciplined him for this conduct. The City cannot be vicariously liable for that conduct.

8

> b. *Lowery's Infliction of Emotional Distress on Ms. Kernea Was Not in Furtherance of the City's Business.*

The facts underlying the IIED claim are the same as the assault and battery claim: Lowery intentionally punched and tackled Mr. Kernea. Lowery did that in full view of Ms. Kernea who reports experiencing distress as a result. As described above, Lowery's intentional acts were not taken in furtherance of his job functions but instead were taken for mere personal reasons. No forecast evidence reveals that Lowery had any law enforcement purpose. On those undisputed facts, the City is not vicariously liable for IIED.

> c. *Lowery's Initiation of Charges Without Probable Cause Was Not in Furtherance of the City's Business.*

The prosecution of Mr. Kernea that followed from the events of March 8, 2020 at the airport was a further step in Lowery's personal mission to enforce his personal view of where chairs should be placed at the airport. Lowery did not like the way Mr. Kernea responded to the demand for chair repositioning, so he decided to prosecute Mr. Kernea. To accomplish that objective, Lowery used the trappings of his office—his badge, uniform, and handcuffs—but the objective nonetheless remained entirely personal. Again, as in *Medlin*, just because Lowery used his authority as a City employee does not make the City liable because Lowery used that authority for purely personal ends. Nor can the City be liable for malicious prosecution on a ratification theory because the City explicitly found that Lowery filed charges without probable cause and disciplined him accordingly.

## CONCLUSION

For these reasons, the City respectfully requests that the Court grant the City's Motion for Summary Judgment.

Dated: February 13, 2026                    Respectfully submitted,

**OFFICE OF THE CITY ATTORNEY**

/s/ *Taylor Imperiale*
Taylor Imperiale (N.C. Bar No. 61777)
Assistant City Attorney
Charlotte-Mecklenburg Government Center
600 E. Fourth Street
Charlotte, North Carolina 28202
Telephone: (980) 275-9796
Taylor.Imperiale@charlottenc.gov

*Counsel for Defendant City of Charlotte*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed using the CM/ECF system, which will electronically notice all counsel of record.

Dated: February 13, 2026

**OFFICE OF THE CITY ATTORNEY**

/s/ *Taylor Imperiale*
Taylor Imperiale (N.C. Bar No. 61777)
Assistant City Attorney
Charlotte-Mecklenburg Government Center
600 E. Fourth Street
Charlotte, North Carolina 28202
Telephone: (980) 275-9796
Taylor.Imperiale@charlottenc.gov

*Counsel for Defendant City of Charlotte*

## CERTIFICATION OF COMPLIANCE WITH STANDING ORDER IN RE: USE OF ARTIFICIAL INTELLIGENCE

I hereby certify that the foregoing memorandum complies with the requirements set forth in this Court's Standing Order *In Re: Use of Artificial Intelligence* (3:24-mc-104).

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg.

Every statement and every citation to an authority contained in this document has been verified by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated: February 13, 2026

/s/ *Taylor Imperiale*
Assistant City Attorney